Good morning, ladies and gentlemen. Our first case of the morning is case 117709, People of the State of Illinois v. Calvin Carter. Are the parties ready to proceed? May it please the Court, good morning. My name is Michelle Katz. I'm a Cook County Assistant State's Attorney, appearing on behalf of the appellant, the People of the State of Illinois. Six years ago, Defendant Mildred Laharn appeared before this Court, and she asked that this Court consider the sua sponte dismissal of her 214-01 petition, which was dismissed by the trial court on the basis of it being untimely brought. Mildred Laharn, as this Court may recall, had been convicted of murdering her husband. She had presented a self-defense theory at trial, and she had come forward with a petition that alleged various things in support of the claim that 214-01 relief should be granted. Seven days after that petition was filed, the trial court dismissed the petition solely on the basis of it being untimely brought. And the issue that was presented to this Court was whether or not a 214-01 petition could be sua sponte dismissed solely on the basis of timeliness. And during the course of the oral argument in that case, there was a discussion about the substantive charges that she had brought in the 214-01 petition, and a question was asked by Justice Carmier as to whether or not the State had been given the opportunity to respond to the allegations that were raised in the 214-01 petition, to which our colleagues at the Office of the Attorney General replied no, there had been no opportunity. And ultimately, the decision that was rendered by this Court did not deal precisely with the question of whether or not a 214-01 petition could be sua sponte dismissed on the basis solely of untimeliness, but rather this Court determined that because only seven days had transpired between the filing of the 214-01 petition and the trial court's dismissal of the petition, that the dismissal was premature because the customary 30-day period provided for in Rule 105 for the State to respond, if it deemed that appropriate, had not transpired. It is difficult to imagine that based on this Court's ruling in People v. Laharne, that it could imagine that what has transpired to date would transpire, which is namely appellate courts having been besieged with multiple claims of two 214-01 petitions being prematurely dismissed because of defendants' failure to follow the rules of this Court, specifically because defendants were failing to follow the dictates of Rule 105 providing for how service is to be affected on the opposing party in the filing of a 214-01 petition. I'm here today to ask that this Court reject the notion that Laharne ever intended to allow for a defendant to take up his own failure to follow the rules of this Court as a sword to disable a trial court from being able to dismiss a petition which is admittedly absolutely meritless, and that is because the factual distinctions between this case and the other cases that are percolating in the appellate court, and I know this Court's aware of all the multiple petitions for leave to appeal that have been filed on this very issue, the factual differences between this case and those cases and the facts that were presented in People v. Laharne dictate that equitable principles that would preclude a defendant from obtaining relief based on his own malfeasance should be fully triggered in these situations and be the basis for denying relief, and those differences are these. Mildred Laharne properly served the State. This defendant, by his own admission, did not. Mildred Laharne came before a reviewing court maintaining that there was substantive merit to the claims that were raised in her 214-01 petition. This defendant admits there is not. Mildred Laharne had her petition dismissed in seven days solely on the basis of it being untimely brought. This trial court waited two months from the day that that petition was received, and it reviewed the petition itself as well as the supporting record in determining that no relief could be granted because the basis of the complaint lacked any conceivable merit. And again, and I think it's worth spending a moment to talk about what precisely the 214-01 petition in this case alleged, which was simply that the defendant was not eligible for the 30-year add-on that he received because he had not been charged, there hadn't been a charging document, there hadn't been a finding by the court that he had personally discharged and caused the death of the victim. And the record, which this court has, shows that there were six charges that were brought. Count five alleged that the defendant discharged a weapon that approximately caused the death of the victim. The judge said, I'm finding him guilty. There was a little bit of discussion later on because the judge took the time to actually review all of its notes before rendering a verdict in this case, and the court said, I'm finding him guilty of the murder. I'm finding approximately caused the death by discharge. And in point of fact, in the trial court, in the motion to reconsider sentence, the defense counsel brought a challenge to the constitutionality of the add-ons, and that was litigated, and that was litigated in the appellate court on the direct appeal. There being no contention at any point in time that the defendant wasn't properly subject to other than, albeit a constitutionally based challenge, that he wasn't convicted of an offense that would allow for imposition of that mandatory add-on. And so that's the petition that's before this court. And the appellate court, as many other appellate courts have, felt bound by this that the 30 days, the customary 30 days didn't pass, and therefore the case has to be remanded. Equitable principles. This is an action grounded in equity. And as such, the equitable principles that would prevent somebody from going forward should apply with full force. Because this defendant came before the appellate court with unclean hands, having failed to comply with the service rules of rule 105, having failed to serve in an appropriate manner, and because his unclean hands are what forms the gravamen of his complaint, namely, I didn't do what I'm supposed to do, therefore I get relief, that shouldn't be You're arguing, I think, that we should not finish and not benefit from failing to follow the rules regarding service. But how is remanding the cause for further proceedings so that the state can participate a benefit to the defendant? I'm sorry, Your Honor, I didn't hear the answer. How does remanding this case a benefit to the defendant? It benefits the defendant by sustaining and keeping alive a petition that has no value and by compelling in some sense, there's no basis for remanding to the trial court. Because it's the state's position that the trial court is under no obligation to do anything. And there's been a discussion of that, that was the remedy that was ordered in Nitz, there just needs to be a dismissal of this case. There's nothing to remand for. It's the fact that a petition is kept alive and it is on the docket of a circuit court and it is clogging up the circuit court dockets, it's clogging up the appellate court dockets, I think it's more a matter of there's no useful purpose to be by a remand aside from the fact that a remand is entirely inappropriate because there's no relief to be afforded because there's nothing incumbent on the trial court or on the state to do once it is returned to the trial court. So it's the breathing additional life into a piece of paper without any value and keeping an action alive that shouldn't be. So it's our position that that remedy, at a minimum, that that remedy is completely inappropriate because it results in nothing of fruition, nothing can come from it. Ms. Katz, how do you address the appellate court when it said that the, well, it ruled that they could not assume that the state would respond to the petition or waive the service issue? The problem is that the inferences that the appellate court refused to draw are not in keeping with the way that the claim should be assessed. We are never going to respond to the claim that was raised by the petitioner in this case because there is no legitimate claim. It's never going to happen. So why the appellate court felt uncomfortable with being able to draw an inference that's the only inference to draw in this case, I don't fully understand. Would there be a different outcome if it were a legitimate claim? Here's the thing, Justice Garmon. There's never been a refusal by the people. There's never been an assertion of the right to be properly served in accordance with Rule 105 in any case that I've seen involving 214.01 on appeal. I am not familiar with a single case where the people have said, this court shouldn't reach the merits of the defendant's claim because the people weren't properly served. Any time that there's been an issue, a substantive issue on a 214.01 petition, it's been responded to. So we have never tried to use this as a shield from an appellate court reviewing the merits of a 214.01 petition. What you have is a manufactured appellate claim that is divorced entirely from the very purpose of 214.01, which is to consider the equities of an action being brought by an individual that would prevent, concerning a fact that if known at the time would have prevented the entry of judgment. The substance of the rule has been completely divorced from all of these matters. And that's deeply troubling. Would there be a reluctance to answer a substantive claim? No. Ms. Katz? Yes, ma'am. With regard to that issue, did the defendant actually have standing when he didn't challenge the dismissal of the petition on merits? Did he have standing to appeal because he failed to do that? This case was not decided in terms of standing. I know that there's a number of cases in the appellate court, and I appreciate the question, that have talked about a defendant's lack of standing. We rely in our brief on this court's decision in MW. And in MW, this court found that the minor respondent could not assert the rights of the minor respondent's father to have proper service. And this court talked about the fact that that minor respondent lacked standing to basically assert the rights of his dad to be properly served. Whether standing is the proper term I think is a little bit trickier because the petitioner's petition is being dismissed, so there is an action, there is the ability to bring an action from that technically. But the underlying philosophy, the underpinnings of the MW decision, we have argued and I maintain, should apply with full force to this situation because there's something fundamentally wrong with the defendant asserting the people's right to have proper service. And so I have not asserted it as a technical standing challenge, but yes, I agree that the philosophical underpinnings of one person not being able to assert the right of another person, and particularly the defendant to step in and say, well, I deny the state of its right to be notified. They should not have that ability to do that, and MW supports that notion. Is it your position that this is an issue of judicial discretion? That the trial judge can say, hey, there wasn't proper service here, you know, reserve your petition, or if he finds it frivolous, as in this case, just dismiss it? Is that where you're at on this? Yes, the court would have discretion to do that. Here the court did not discuss the service is not part of the record. It's, I mean, it's even ambiguous if you want to look at this record, how the people were served. I mean, the defendant makes a representation that he put it in the mail. We don't really know one way or the other, and that's part of the problem with what the appellate court did here, is that it did draw an affirmative inference that it wasn't done correctly. I'm accepting, for purposes of this argument, the defendant's admission that he didn't serve the people properly. And because you started your argument with saying courts have been besieged, you want this court to stand for the proposition that the trial judge can do exactly what he did in this case? Exactly. And that there should not be the ability of defendants, regardless of whether or not the state's attorney is in the room or not in the room, a rule from this court that would take care of all of these cases, regardless of this particular, there's a whole line of cases, OCON is one of them, talking about when a state's attorney is actually present in courtrooms, so is there a waiver of the right to be properly served? What I'm urging this court to do is come up with a rule that would cover all of these cases, and yes, allow for the dismissal of a 214-01 petition and disallow a defendant, solely on the basis of his malfeasance, from coming before an appellate court and saying, I get a remand to keep this non-meritorious piece of paper alive for all eternity. If I understand the defendant's assertion that the petition was not ripe for adjudication, pursuant to Longhorn, how, if the state has never served, would the 30-day period ever begin to run? What happens to a petition that is laying there, is the judge to do nothing? Well, under Supreme Court Rule 103, the court would have the ability to find that, because the defendant failed to exercise diligence, that it could, with or without motion of the opposing party, the state, dismiss it, and the rule provides that if that happens in excess of the statute of limitations, that that would be with prejudice. If it's within the statute of limitations, it would be without prejudice. It's sort of the NITS, people versus NITS remedy, that has been applied without a finding of prejudice. So there is authority in that rule for the trial court to act without service having been affected on the people. That's the authority I would rely on for the proposition that the court maintains the power to do that. And because as just a very practical common sense matter, it can't be diligent to not follow a Supreme Court rule that specifically articulates three ways in which a defendant can affect service and do none of them, which is what happened here. Because of the reasons that I've stated here, the LaHarne decision should not be extended to cover these situations. It's clearly not what this court ever intended. It doesn't fit. The paradigm is entirely different. The defendant should not be entitled to take a meritless 1401 petition and receive appellate relief and keep it in some sort of suspended state of animation. And based on the reasons that are presented in the people's brief and the arguments that I've made today, we'd ask that you reverse the appellate court. Why isn't this issue forfeited? Why are we talking about it? In the basis of the people's brief, there is forfeiture discussion insofar as the defendant's inability to present a record that shows clear error. It's in there and it talks about, again, the question of what the record actually affirmatively demonstrates in the way that the defendant served the people. And whether or not there was really a legitimate basis for the appellate court to even sort of go there. I think that that's founded on forfeiture type principles. And certainly we would not be opposed, Your Honor. Thank you. Thank you. Your time has expired. Good morning. May it please the court. I'm Jennifer Bontrager from the State Appellate Defender on behalf of Kelvin Carter. The appellate court's conclusion in this case that the dismissal of Kelvin Carter's 214-01 petition was premature because there was no indication that the state was properly served and therefore that the 30-day clock for dismissal never started ticking came directly from this court's decisions in People v. Vincent and People v. Laffern. It is not a stretch. It is not a matter of unclean hands or gamesmanship. This case is, in fact, grounded on the orderly administration of judicial process. In Vincent, this court held that a judge may dismiss a 214-01 petition sui sponte and that the state's failure to answer or respond is an admission of all well-pleaded facts in the petition. In both Vincent and Longhorn, didn't both those cases involve properly served petitions? Yes, they did, Your Honor. In Vincent, this court expressly discussed properly served petition. In Laffern, this court did not quite come out and say that it was properly served, but this court did discuss Rules 105 and 106. And that is correct that Mr. Carter was unable to effect proper service in this case. But the fact remains that petitioners, as well as respondents, are entitled to process that gives his opponent the opportunity to review and perhaps weigh in on, though not necessarily, at least review what he believes is a valid claim. How is the defendant harmed by the state's lack of notice and loss of opportunity to respond to the petition? He's entitled to fair process. With proper notice, it's conceivable that... So what's the harm? The harm is that his petition is dismissed without ever having the state respond to it substantively. He's not given process. He's not given the full process to which he was entitled. It is certainly conceivable that a prosecutor could receive a petition that states a valid claim for relief. If the prosecution never receives it, it's dismissed, then he is stuck with a problem trying to get that... He can't get that relief. He can't get even a hearing on it to which he is entitled. Despite the improper service, didn't the trial court rule on the merits of the petition? And that wasn't challenged, isn't that right? That's correct. So how would a remand benefit your man? Well, he would at least get the process to which he was entitled, knowing that the state had received the petition, had reviewed the petition, and had, when given the opportunity to respond to it, declined to do so. Is that exalting form over substance? No, Your Honor. It is simply following the proper orderly administration of judicial process. But he's the guy that caused the improper service, right? He did. He was not able to file his petition via certified mail, and to the extent that that implicates Rule 103, any finding of diligence should favor an incarcerated inmate. This court has consistently recognized the difficulties that incarcerated petitioners face in attempting to access the courts. This court recently, for example, amended Supreme Court Rule 12 to allow proof of service via placement in the institutional mail service for regular mail. This court could easily do the same and amend Rule 106 to allow that incarcerated individuals filing 214-01 petitions need only serve the state by placing the petition in the institutional mail. Dovetailing off of Chief Justice Garmon's question, where is the defendant prejudiced? I mean, the most he could accomplish, really, is proper service at a later point in time and having it dismissed at that time. Where is there any prejudice here? It's simply a matter of him not receiving the process to which he was entitled. Ensuring proper service protects all of the parties, not just the petitioner. The petitioner, the respondent, the court itself, and upholds the integrity of the process, which is something that this court emphasized a great deal in People v. Vincent and in People v. Laffren. So it's simply allowing him to have his full day in court instead of short-circuiting that process and skipping over a crucial element of it. Since you did not appeal the dismissal of the petition as being meritless, could we reverse the appellate court and affirm the circuit court on the basis that any error was harmless if there was an error, and of course the error is attributable to the defendant? The error is attributable to the defendant, and this court can conduct a de novo review. But this court's de novo review right now is on this particular question. We, as much as the state, would like this court to provide a rule, a single rule, that addresses all cases. We have no objection to this court finding that actual notice of a petition is sufficient. It is simply because the purpose of Rule 105 is satisfied even by actual notice. Does the fact that an assistant state's attorney was present at least at the second hearing indicate actual notice even though he or she did not speak up? Certainly an affirmative waiver would be ideal. Actually speaking on the record, acknowledging the petition as opposed to merely being present. This court has often discussed the need for an affirmative waiver. Even if that presence is sufficient, the state's attorney was only present on the day it was dismissed, which would still make the dismissal premature under this court's rule from Laffarne. Do you have any support for the notion that the defendant can create error and then profit by the error without any complaint from the state? No, but to the extent that he has created any error, the error here is a ministerial one. He has not injected any substantive error and he is not receiving any substantive relief. The state has relied pretty heavily on this unclean hands idea. The cases on which the state relies, though, are cases in which there was an affirmative injection of error that resulted in substantive relief. That's premature in this case. We're talking about the ministerial functions that ensure service of process and an orderly administration of process throughout the proceeding so that the petitioner and the respondent receive that they in court that the petitioner is entitled to. I think somewhere in the briefs there was an argument that we can affirm on any basis on the record. Can we reverse on any basis on the record, including the fact that there was no service? Therefore, the petition should be dismissed. I'm not familiar with a case off the top of my head that says your honors can reverse for any reason on the record. I know you can affirm for any reason on the record. I apologize. I don't have a case for you on that basis. But again, I don't think we are actually all that far apart from the state. We also would like a rule that addresses all of the pending cases on this issue. A small act by the judge could satisfy a matter of faulty service. The error in service was noticeable on the proof of service. The judge could merely have noticed that, mentioned it to the state, could have issued a written order, could to compel Mr. Carter to submit a written order. It could somehow affect service via certified mail, somehow try to access certified mail from within the correctional facility. So you're saying it was the court had the obligation to determine whether or not there was service, despite the fact the defendant did not raise it in the trial court, that issue in the trial court? Correct. I mean, to the extent... Why shouldn't we go back to ground zero and say this case was in the trial court. Nothing happened here. Literally nothing happened here. Why is the burden on the trial court or the state when in fact it was the defendant that set this all in motion in the trial court? I'm sorry, could you ask that? You're suggesting what the trial court should have done, the burden on the trial court to remedy this problem. Absolutely. This court has consistently recognized the difficulty that incarcerated individuals face, particularly pro se inmates. This court has repeatedly urged that trial courts treat pro se pleadings generally with a generous eye and acknowledge the difficulties that pro se petitioners face. Mr. Cartier is hamstrung in his ability to affect service that's required by Rule 105B, by the fact that he is incarcerated. He is limited to the institutional mail that is available to him. It's a very small thing that a trial judge can do. He can see that the proof of service does not mention proper service, does not mention certified mail in the state. It's very easy for the judge to notice that. Perhaps issue a written order, but more likely just ask the state's attorney in the courtroom, did you guys receive this? Would you waive any defects in the service? Do you want to respond? It's a very simple burden to protect the integrity of the judicial process and to give the petitioner the process that he is entitled to. Why shouldn't that burden be on the defendant to say, judge, I didn't serve, and therefore we shouldn't proceed on this? Call it to the court's attention, even if it's after a ruling, and isn't there forfeiture? From the petitioner, I suppose it would be ideal if he were to say in his proof of service that he was unable to affect proper service. He didn't. Again, he's hamstrung by his incarcerated status. And this court has, again, repeatedly noted the troubles and limitations faced by pro se petitioners. Again, it's an easy enough problem to remedy. And we would ask that this court, I'm sorry if there are no other questions, this court should affirm the appellate court. Dismissing a 214-01 petition without ensuring service on the state court circuit to the proceedings, and that's something that this court has already found should not happen. Thank you. I agree that the defendant is entitled to fair process, and that's precisely what he received in this case. He had consideration of the substantive merits of the claim that he raised, considered by the judge, in a way that Mildred Laharn did not, and in a way in which she implored this court to have happen. That happened here. It is the defendant's affirmative injection of error into this record that is the sole basis for him claiming that he's entitled to appellate relief. It is difficult to imagine a situation where a defendant should be less entitled to receive any form of appellate relief based on this form of a petition. The question is not whether the trial court can do something additional. The question is whether or not the defendant's failure to comply with this court's rules should compel a trial court to have to do more. And I suggest to this court that the answer to that question should be no. This court has repeatedly stated that the guiding principles in administering 214.01 relief is that the petition needs to invoke the equitable powers of the circuit court to prevent the enforcement of a judgment when that judgment would be unfair, unjust, or unfair. There is nothing unfair, unjust, or unconscionable in what the trial court did in this case, and the only thing that's unfair and unjust would be to require more on the part of either the people or the trial court when a defendant takes the position that his failure to comply with the Supreme Court rule entitles him to appellate relief. And so, for these reasons and those stated in our brief, we would ask that this court reverse the appellate court's ruling and affirm the dismissal of defendant's 214.01 petition. Thank you. Case number 117709, People of the State of Illinois v. Calvin Carter, will be taken under advisement as agenda number 13. Ms. Katz and Ms. Brontrager, thank you for your appearance in our units this morning. You are both excused at this time.